## In Re Assignment of John Pund.

*Chattel mortgage kept off record—void as against subsequent creditors.*

A chattel mortgage executed by a debtor to his creditor who, aware of his insolvent condition, by agreement keeps it off record, to enable him to continue business and prevent his credit from being affected, is void as against subsequent creditors.

*Decided November 23, 1889.*

This cause is submitted upon the application of August Teisman, Stenger, Boyd & Co., Herman Buehr and Joseph Hellman, to determine the validity and to fix the priorities of several liens. From the exhibits and proofs the following facts appear:

In Re Assignment of John Pund.

John Pund was engaged in the shoe trade in this city and became indebted to Teisman in the sum of $500, for money borrowed. In order to secure this indebtedness, he executed and delivered to him a chattel mortgage, on October 22, 1888, on the stock of goods in his (Pund's) possession.

It was then and there agreed between Pund and Teisman, that this mortgage should not be placed on record, until such time as he, (Pund) might suggest; that if it became necessary to make an assignment, Pund would so inform Teisman, in time to permit the mortgage to be filed. It was also understood at the time, that the object of keeping it off record was to permit Pund to continue business and prevent his credit from being affected; for Teisman knew that Pund was indebted to other parties and that his financial condition was such, that a filing of the mortgage at this time, would precipitate an assignment.

On the morning of the 27th day of November, 1888, a judgment in favor of Stenger, Boyd & Co. had been rendered. Of this Pund had knowledge, and anticipating that an execution would issue thereon, and having been pressed for money by other creditors, concluded to make an assignment. Desiring now to carry out his part of the agreement with Teisman, Pund went out to find him and to inform him of the necessity of his making an assignment, and to request him to place his mortgage on record; but he was not successful in finding Teisman.

In Re Assignment of John Pund.

In the meantime, however, Teisman having obtained information from other sources, of the condition of Pund at this time, placed his chattel mortgage on file at 10 o'clock of the same morning.   At 10:30 of the same morning, Stenger, Boyd & Co., caused a levy to be made upon the stock of goods covered by the mortgage of Teisman.   At 1:05 o'clock P. M. of the same day, a deed of assignment from Pund to Henry D. McClure was filed.

*Granger & Hunt*, for Stenger, Boyd & Co.

*Judge Yaple & W. H. Lueders*, for Teisman.

*Giaque & McClure*, for assignee.

GOEBEL, J.

There is no dispute as to the amounts due upon the various claims.   On behalf of Stenger, Boyd & Co., it is claimed that the mortgage to Teisman is void as against other creditors of the mortgagor, for the reason that, after obtaining the mortgage, he permitted the property to remain in possession of the mortgagor, who exercised dominion and control over the same.   In support of this proposition counsel cite *Collins vs. Myers*, 16 Ohio, 547.   *Harman vs. Abbey*, 7 O. S. 218.   *Freeman vs. Rawson*, 5 O. S. 1.

In the case of *Collins vs Myers* the partnership was dissolved.   Myers continued business on his own account and took the stock in trade, the debts due the firm and other personal effects, and assumed

the payment of the firm debts. In order to indemnify Collins against the firm debts, he executed to him a mortgage on his stock of groceries and other personal property, with the stipulation therein, that the property shonld remain in the possession of Myers, until Collins might be compelled to pay the debts, or until he should become fearful that he would have the same, or some part thereof, to pay; when it would be lawful for him to take possession of the property and to sell the same at public or private sale, and to pay the debts out of the proceeds, and the surplus, after paying expenses, to Myers.

Myers added to the stock, and from time to time sold therefrom. Subsequently King & Hunter, assignees, levied upon the stock of goods; and the question arose, whether Collins had a lien, by virtue of his mortgage, upon the stock of goods left in the possession of Myers.

The court in that case held, that a mortgage of personal property, where the mortgagor retains possession of the property mortgaged, with a power of sale, is void as against subsequent purchasers and execution creditors, and said: "To hold that such a mortgage was valid would furnish a complete shelter, under which a man could carry on the trade for his own benefit, completely protected against the payment of his debts and placed wholly beyond the reach of creditors. * * * The very nature of a

mortgage is to fasten a lien upon specific property; and the courts have gone far enough when they have permitted an honest possession in the mortgagor, because that opens up a power by which an honest vendee may be defrauded, by purchase without notice." Collin's security depended entirely upon the honesty and good faith of the debtor, and as he might dispose of it to a creditor at will, to satisfy a debt, there was no reason why a creditor might not seize it against his will, for the same object. This doctrine was approved in *Harman vs. Abbey,* and in *Freeman vs. Rawson* above cited.

In the case of *Kleine, Hegger & Co., vs. Katzenburger & Co.* 20 O. S. 110, the court held, that a stipulation in a mortgage of goods that the mortgagor shall retain possession and sell the goods in the usual retail way, paying over the money received therefor to the mortgagee as the goods are sold, does not render the mortgage *per se* fraudulent and void, as against other creditors of the mortgagor. The question of good faith arising upon such stipulation, is one of fact for the determination of the jury.

Commenting on the cases cited, the court say: " When it is said, therefore, in those cases that a mortgage of personal property with possession and a power of disposition reserved to the mortgagor, is fraudulent and void as against his other creditors, we are to understand this as referring to a power of dis-

position *for the mortgagor's own benefit.* It is only where the power of sale is such as to leave in the mortgagor a dominion over the property, inconsistent with the alleged lien of the mortgage, that the latter has been held *per se* fraudulent and void."

In this case no power of disposition appears on the face of the mortgage. Nor do we think one can be fairly inferred, when we take into consideration the fact, that the time between the filing of the mortgage and the deed of assignment was short; considering, also, that Teisman had knowledge of the financial condition of Pund at this time, and the necessity of his making an assignment, this would rebut the presumption, if any arose, of an agreement or understanding that the mortgagor was to retain possession with a power of disposition.

If there were no other questions involved, except the one whether Teisman having permitted the property to remain in possession of Pund from 10 A. M., until 2 P. M., of the same day, his lien was thereby affected, considering all the circumstances, we should long hesitate before holding that the mortgage was fraudulent and void.

The question whether an insolvent debtor, knowing his insolvency and in contemplation of assigning for the benefit of his creditors, can prefer one or more of such creditors, was not raised; nor do we express any opinion upon that subject. This question is now pending in the Supreme Court of Ohio,

and, for the present, we will assume that it is not forbidden that a debtor has a right to prefer one creditor over another, and that a vigilant creditor is entitled to the advantage secured by his watchfulness and attending to his own interest.

We think the most important question is, what force shall be given to the agreement between Pund and Teisman, in so far as it affects the rights of subsequent creditors. Shall a party avowing himself a participant in such transaction receive, and shall the court countenance or aid him in forcing a lien growing out of it against subsequent creditors ?

A mere failure to record a mortgage is not a ground for setting it aside for the benefit of subsequent creditors, who have acquired no specific lien on the property described in the mortgage.

In the case of *Hilliard vs. Cagle*, 46 Miss. 309, the grantor retained possession of the property and the deed was withheld from record under an agreement not to record it for a year or so after its execution, because it would injure his credit. The mortgagor thereby was enabled to contract debts, upon the presumption that the property was unencumbered. The court held that the natural and logical effect of the agreement and the contract of the parties thereto, was to mislead and deceive the public and induce credit to be given to the mortgagor, which he could not have obtained if the truth had been known;

and therefore, the whole scheme was fraudulent as to subsequent creditors, as much as if it had been contrived for that motive and for that object. This principle is also discussed in the cases of *Gill vs. Griffith & Schley*, 2 Md. Ch. 270. *Hafner vs. Irwin*, 1 Ired (N. C.) L. 490. *Blennerhassett vs. Sherman*, 105 U. S. 100. *Hillburn vs. Brown*, 17 B. Mon (Ky.) 779.

It may be said that, in as much as the mortgage did not take effect as a lien, until the filing thereof, subsequent creditors were not prejudiced. We think, however, there arose a duty on the part of Teisman to file his mortgage, towards all who might become creditors, a breach of which, in respect to such creditors, without notice, constituted such negligence and laches, as in equity requires that the one in fault shall stand the loss.

Again, the effect of the agreement, although there was no actual fraudulent purpose contemplated at the time, enabled Pund under semblance of being the owner of unencumbered property, to continue business and obtain credit which might have been otherwise withheld, and that, as against subsequent creditors, the court ought not to countenance or aid in the enforcement of a lien in favor of a participant to such agreement,

It must follow that the mortgage to Teisman is void and will be set aside.